***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On November 12, 1992, the employee sustained an injury by accident arising out of and in the course and scope of his employment with the employer.
2. An employment relationship existed between the plaintiff and defendant.
3. The employer, Kobe Copper Products, was insured for workers' compensation by Tokio Marine Management.
4. Upon the alleged date of injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. Plaintiff's average weekly wage was $418.31 and his compensation rate is 4278.89.
6. Plaintiff's date of birth is April 24, 1960.
7. This is an admitted claim pursuant to which plaintiff is receiving weekly compensation benefits of $278.89 and medical compensation.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. An employment relationship existed between plaintiff and defendant-employer. The employer, Kobe Copper Products, was insured for workers' compensation by Tokio Marine Management, Inc. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On November 12, 1992, plaintiff sustained a crush injury to his dominant right hand at work rendering it useless. Plaintiff's date of birth is April 24, 1960. The plaintiff testified before the Deputy Commissioner that he underwent thirteen surgeries to save his arm from amputation.
3. On November 12, 1992, the plaintiff-employee sustained an injury by accident arising out of the course and scope of his employment with the defendant-employer.
4. Plaintiff's average weekly wage was $418.31 and his compensation rate is $278.89.
5. This is an admitted claim pursuant to which plaintiff is receiving weekly compensation benefits of $278.89 per week and medical compensation.
6. Plaintiff further testified before the Deputy Commissioner that he enrolled himself in vocational rehabilitation in 1995 at Woodrow Wilson in Waynesville, VA. Plaintiff testified that he completed 75% of the program but that he was unable to complete the program because of the physical labor. The plaintiff also testified that he sees no reason to go through further vocational rehabilitation, as it would not be of any benefit to him.
7. At the hearing before the Deputy Commissioner, plaintiff testified that in 1997 he enrolled in Danville Community College to study Accounting. Plaintiff undertook 18 hours per semester, however, he could not complete his schedule because it took too long to complete the work.
8. Plaintiff has treated with a number of physicians over the history of this case. Dr. Glenn, a psychiatrist, has treated plaintiff for eight years. Plaintiff contends that Dr. Glenn's treatment has helped him and that he would benefit by continuing to treat with Dr. Glenn.
9. During the last five years, plaintiff also has been treating with Dr. Phan, a psychiatrist and pain management specialist.
10. Dr. Phan stated that he did not believe plaintiff's treatment with Dr. Glenn was resulting in any progress but that in the last few visits maybe the plaintiff had gained some insight into her treatment. Dr. Phan, in his treatment with plaintiff, has encouraged plaintiff to get on with his life and has suggested that plaintiff find something that is reasonable for him to achieve that plaintiff could work at on his own pace.
11. Dr. Phan opined that the plaintiff should have a vocational rehabilitation assessment to evaluate and to determine what his strength is and then to develop his strength.
12. The defendants are required to provide medical compensation, including vocational rehabilitation as may reasonably be required to effect a cure, give relief or lessen the period of disability. In so doing, the defendants asked Ms. Karen Taylor, MSCRC, to render an assessment of the plaintiff. To accomplish this assessment, Ms. Taylor reviewed many of the plaintiff's medical records.
13. At the hearing before the Deputy Commissioner, Ms.Taylor testified as an expert witness in the field of vocational rehabilitation. Ms. Taylor testified that a rehabilitation counselor reviews medical records, meets with the individual, obtains a complete job history, learns about his physical capabilities, mental capabilities, and psychosocial information, as well as other past vocational history. In addition, the client's interests, work history, former earnings, duties and any special certifications or talents or abilities must be considered. Ms. Taylor reviewed many relevant records of the plaintiff to determine whether rehabilitation would be feasible for the plaintiff.
14. At the hearing before the Deputy Commissioner, Ms. Taylor stated that a vocational assessment is a "face to face meeting with a client to gather all this information to render an opinion". She also stated that a vocational assessment determines the feasibility of a client for participating in vocational rehabilitation.
15. Ms. Taylor further testified at the hearing before the Deputy Commissioner that she initially only offers her opinion as to whether or not she believes a vocational assessment is appropriate. The Full Commission finds that this is precisely what Ms. Taylor attempted to do at the hearing before the Deputy Commissioner. If a vocational assessment is appropriate, then Ms. Taylor performs the assessment and prepares a tentative, appropriate and individualized plan for services. Furthermore, Ms. Taylor testified that if during the process of determining whether or not a vocational assessment is appropriate, it is determined that a client is not medically or psychologically feasible, then a different approach would be appropriate.
16. At the hearing before the Deputy Commissioner, Ms. Taylor testified that a plan for therapy services includes developing short-term and long-term goals based upon some type of measurable goal. Moreover, Ms. Taylor opined that Dr. Glenn's records failed to reflect the development of or use of measurable short-term or long-term goals that are generally required to be developed in successful therapy. The Full Commission gives greater weight to the opinions of Dr. Phan over those of Dr. Glenn.
17. The plaintiff introduced no evidence other than his own opinion that he should not participate in vocational rehabilitation. Notwithstanding the plaintiff's lay opinion, the competent, expert medical evidence in the record establishes that the plaintiff should cooperate and undergo an initial vocational rehabilitation assessment with Ms. Taylor to evaluate his strengths and the feasibility of plaintiff's participating in vocational rehabilitation and ultimately participating in an appropriate individualized plan for services for the plaintiff.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
1. The defendants are required to provide medical compensation, including vocational rehabilitation as may be reasonably required to effect a cure, give relief or lessen the period of disability. In order to lessen the period of disability, the plaintiff must cooperate and undergo a vocational rehabilitation assessment with Ms. Taylor to evaluate his strengths and the feasibility of Plaintiff's participating in vocational rehabilitation and ultimately participating in an appropriate individualized plan for services. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff shall cooperate and undergo a vocational assessment and comply with the recommendations resulting from said assessment. The assessment and any resulting recommendations shall be determined by Ms. Karen Taylor or by a specialist recommended by Ms. Taylor.
2. Defendants shall bear the costs of this action.
This the ___ day of September, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN